IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JUANITA NORMAN, Administratrix ad Prosequendum of the ESTATE OF SHERRON J. NORMAN, Deceased,<br><br>        Plaintiff,<br><br>   v.<br><br>HADDON TOWNSHIP, et al.,<br><br>        Defendants. | Civil No. 14-6034 (NLH/JS) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on plaintiff's "Motion for Approval and Distribution of Settlement and for Reasonable Counsel Fees." [Doc. No. 131]. There is no opposition to the motion. An in-person hearing and oral argument was held on July 16, 2018. For the reasons to be discussed, plaintiff's motion is GRANTED and DENIED in part without prejudice.[1] The Court approves as fair and reasonable the parties' $800,000 settlement. The Court also approves plaintiff's counsel's application for an enhanced contingency fee of 33 1/3% ($250,634.85) and reimbursement of costs ($48,020.25).

Background

---

[1] Pursuant to 28 U.S.C. §636(c), the parties consented to the jurisdiction of this Court to hear and decide this motion. [Doc. No. 133].

1

This case arises from the tragic death of Sherron J. Norman ("Norman") who was unfortunately a drug addict most of his adult life. As confirmed in video evidence, on September 29, 2012, Norman was behaving bizarrely—shouting, hitting the counter and cash register, and ultimately pulling down his pants, at a Crown Fried Chicken fast food restaurant on Mt. Ephraim Avenue in Haddon Township, New Jersey. After 911 was called, various patrol officers and EMS personnel arrived at the scene. Haddon Township's officers were first to arrive. Although denied by defendants, plaintiff contends the police officers struck Norman numerous times. Norman was then placed in the back of a patrol car, lying face down and left unattended. When an officer and EMT checked on Norman he was unresponsive. Norman was later pronounced dead at Our Lady of Lourdes Hospital. Defendants contend that at all relevant times Norman was in a "zombie like" state and combative. Defendants contend they were bitten by Norman, he was out of control and he acted violently. Plaintiff contends Norman died from positional asphyxia and cardiopulmonary arrest during restraint for bizarre behavior. Relying upon the autopsy report of the Gloucester County Medical Examiner and the opinion of a separate forensic pathologist, defendants contend the cause of death was cocaine intoxication.

On March 13, 2013, Juanita Norman ("Juanita"), Norman's sister, was granted Administration Ad Prosequendum by the

2

Surrogate's Office in Camden County. Juanita filed her sixteen-count complaint on September 28, 2014 against 21 defendants. These defendants included five municipalities, their police chiefs and their respective officers who responded to the scene. To put it mildly, the litigation was vigorously contested. After defendants' motions for summary judgment were decided on June 29, 2017 [Doc. Nos. 97, 98], only the Haddon Township defendants remained in the case. The case settled in April 2018 for $800,000 on the eve of jury selection. At all relevant times the husband and wife civil rights duo of Sharon and Stanley King, King and King, LLC, represented Norman.

Norman was not married when he died. He had at least one child, O.L., who lives with her court-appointed guardian. Norman may also have another minor child, K.J., who lives with his grandparents.

In order to confirm the beneficiaries of Norman's Estate a separate action was recently filed in the Chancery Division - Probate Part, Camden County Superior Court. The action seeks to confirm that O.L., and possibly K.J., is a beneficiary of the Estate. The action also seeks to expand Juanita's role to that of Administratrix of the Estate of Norman so that she will be permitted to distribute the funds of the Estate pursuant to the Chancery Division's Order. Separate counsel was hired to handle the Estate issues and he appeared at the July 16, 2018 hearing.

According to counsel, the Chancery Division will not only decide the beneficiaries of the Estate, but also how the net settlement funds will be paid and distributed after the payment of plaintiff's attorney's fees and costs.[2]

Counsel's motion seeks approval for a 33 1/3% contingency fee and reimbursement of out-of-pocket expenses of $48,020.25. The proposed attorney's fee represents 1/3 of plaintiff's net recovery rather than 25% as is normally the case where the beneficiary of a settlement is a minor.

Discussion

Given the action filed in state court and the fact that an experienced probate Judge will decide who the beneficiaries of Norman's Estate are and how the net settlement funds will be paid and distributed, there are only two issues this Court has to decide. One, whether the proposed $800,000 settlement should be approved as fair and reasonable. Two, whether plaintiff's counsel is entitled to an enhanced contingent fee of 33 1/3% rather than 25%, and whether reimbursement of counsel's costs in the amount of $48,020.25 should be approved.

1. Settlement Approval

The Court has no hesitation approving the settlement of the case for the total sum of $800,000. The Court is intimately

---

[2] Since these distribution issues will fortunately be decided by the state court, plaintiff's request that this Court decide the issues will be denied without prejudice.

familiar with the case having managed the proceedings since the Fed. R. Civ. P. 16 Scheduling Conference was held on January 7, 2015. Throughout the history of the case the Court has held numerous conferences and hearings and is familiar with the strengths and weaknesses of the parties' litigation positions.

Given the liability issues in dispute, and the real possibility of a defense jury verdict, the Court finds $800,000 is a fair, reasonable and appropriate settlement. While Norman's death was tragic, the facts of life are that the decedent was not a particularly sympathetic plaintiff. After all, on the evening of his death the police were confronted with an undressed drug induced individual who was behaving bizarrely. Further, defendants presented formidable experts who opined that defendants were not to blame for Norman's death. In addition, Norman did not make an economic loss claim and the extent of his pain and suffering damages was subject to dispute. In addition, the Court is convinced defendants were not going to pay any more money to settle if plaintiff did not accept their last $800,000 offer. Under all these circumstances, the $800,000 settlement is eminently fair and reasonable.

2. <u>Attorney's Fees and Costs</u>

Since the beneficiary of the decedent's estate is a minor, plaintiff's contingency fee is limited by N.J.R. 1:21-7(c)(6). This Rule limits a contingency fee to 25% where the amount

recovered is for the benefit of a minor.[3] Plaintiff's attorneys, however, request an enhanced fee pursuant to N.J.R. 1:21-7(f).[4] This Rule provides:

> If at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge or the designee of the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances. This rule shall not preclude the exercise of a client's existing right to a court review of the reasonableness of an attorney's fee.

Plaintiff's application for an enhanced contingent fee raises two issues. One, whether an enhancement may be awarded where the beneficiary is a minor. Two, whether plaintiff's attorneys are entitled to an enhancement. The answer to both questions is yes.

As to whether an enhanced contingency fee may be awarded in a minor's case, the question was answered in the affirmative in Murphy v. Mooresville Mills, 132 N.J. Super. 197 (App. Div. 1975). In Murphy the court held that the enhancement provision in N.J.R. 1:21-7(f) applies in a case where the beneficiary is a minor. Specifically, the court wrote:

---

[3] The Rule only applies if settlement occurs before a jury is empaneled. To the credit of plaintiff's counsel, they did not wait to settle until after jury selection which was imminent. If settlement was delayed, plaintiff's attorneys did not need Court approval to recover the contingent fee of 33 1/3%/30% set forth in their Agreement to Provide Legal Services. See Plaintiff's Motion, Exhibit A.

[4] Plaintiff's retainer specifically provides that in the event of a settlement the law firm may petition for a reasonable fee pursuant to N.J.R. 1:21-7(f). Id. at 2, ¶3.A.

> We perceive nothing in the rule [N.J.R. 1:21-7(f)] or in reason which would warrant limiting the rule's relaxation provision to all contingent fee cases except those involving infants…. When the rule is read as a whole it evidences a clear intention to make all contingent fees, including those in infants' tort cases, subject to increase with Court approval in special cases.

Id. at 199. More recently in A.W. v. Mount Holly Twp. Bd. of Educ., 453 N.J. Super. 110 (App. Div. 2018), the Appellate Division indicated in dicta that an attorney can apply for an enhanced contingent fee in a minor's case. While the court rejected the attorney's argument that she was entitled to her 45% agreed upon contingency fee in a LAD and NJCRA case, the court indicated plaintiff could file for an enhanced fee under Rule 1:21-7(f). Id. at 120.

Having decided that an enhanced contingency fee may be awarded in the case, the Court must decide whether plaintiff's proposed 33 1/3% fee, rather than 25%, is appropriate. The answer is an emphatic yes. Important factors the Court considers in this regard are whether the case presented problems which required exceptional skills beyond what is normally encountered and whether the case was unusually time consuming. Estate of McMahon v. Turner Corp., C.A. No. 05-4389 (JBS), 2007 WL 2688557, at *3 (D.N.J. Sept. 7, 2007). The Third Circuit has recognized: "[t]he New Jersey caselaw instructs that the attorney seeking an increased fee must demonstrate that (1) the fee allowed under [Rule 1:21-7(c)] is not reasonable

7

compensation for the services actually rendered, and (2) the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming." Mitzel v. Westinghouse Elec. Corp., 72 F.3d 414, 418 (3d Cir. 1995)(citing Wurtzel v. Werres, 201 N.J. Super., 544, 549 (App. Div. 1995)); see also A.W., 453 N.J. Super. at 119.

If there ever was an exceptional case to warrant an enhanced fee in a minor's case this is it. Plaintiff's counsel's work in the case was superb. Given the circumstances surrounding Norman's death and the unsympathetic situation he presented, it is likely not many attorneys would have represented Norman. Nevertheless, eyeing a potential injustice, Sharon and Stanley King undertook the representation. The Kings undertook the representation knowing they faced an expensive and long uphill battle. Plaintiff's attorneys were retained approximately six (6) years ago and invested four (4) years of litigation before the case settled. The engagement likely came at a great personal sacrifice. The Kings work in a small firm and the substantial resources counsel invested in terms of time and money likely foreclosed them from accepting more lucrative engagements. The Kings wisely retained qualified experts at the inception of their engagement, including the retention of a renowned former Chief Medical Examiner, City of New York. Moreover, it is

significant that plaintiff's lodestar in the case is in excess of $1 million. Even with an enhancement to 33 1/3% plaintiff's counsel are earning less than 1/4 of the time they invested. In short, the record supports the Court's finding that plaintiff's counsel's efforts "were long, arduous and assiduous in achieving an excellent result for plaintiff[]." Murphy, 132 N.J. Super. at 200.[5]

As to the request for reimbursement of out-of-pocket litigation expenses in the amount of $48,020.25, the request will also be approved. The Court has the authority to approve the expenses incident to litigation filed for the benefit of a minor. N.J.R. 4:44-3; see also 42. U.S.C. §1988(b). The Court has reviewed counsel's cost request and finds that all claimed costs were reasonably incurred and are reasonable as to their amount. Thus, counsel's costs shall be reimbursed.

One additional point will be mentioned. All citizens deserve to be represented by competent counsel when a potential injustice occurs.[6] Like it or not, unless the prospect of an enhanced fee is possible the meek and downtrodden may not be able to attract competent counsel to handle unpopular or unduly

---

[5] This case is not an isolated occurrence. See King v. Gloucester, 483 F. Supp. 2d 396 (D.N.J. 2007). In addition, the Court has no doubt plaintiff's final attorney fee is reasonable taking into account the factors listed in R.P.C. 1.5(a). Further, counsel's enhanced contingent fee is hardly a windfall given the lodestar in the case.
[6] To be clear, the Court is not weighing in one way or the other as to the merits of Norman's claims.

difficult cases. Lawyers should be incentivized to represent all persons, not just those with largesse. Fortunately, Sharon and Stanley King put the welfare of their clients ahead of their potential for personal gain. An enhancement pursuant to N.J.R. 1:21-7(f) is a necessary vehicle to partly reward them for their sacrifices.[7] An enhanced contingency fee in a case like this is "necessary to incentivize attorneys to shoulder the risk of nonpayment to expose potential violations of the law and to achieve compensation for injured parties." Cf. In re: Southeastern Milk Antitrust Litigation, Master File No. 2:08-MD-1000, 2012 WL 12875983, at *4 (E.D. Tenn. 2012).

Conclusion

For all the reasons discussed herein, the Court approves plaintiff's settlement and plaintiff's counsel's request for an enhanced contingency fee and reimbursement of costs incurred. The Chancery Division – Probate Part, Camden County Superior Court, will determine the beneficiaries of Norman's Estate and how the net settlement funds will be distributed and paid. An appropriate Order follows.

ORDER

Accordingly, for the foregoing reasons,

---

[7] The Court would be remiss it if did not also mention that at all relevant times defense counsel zealously represented his clients and exhibited the professionalism and skill of an experienced litigator.

IT IS HEREBY ORDERED this 23rd day of July, 2018, that plaintiff's Motion for Approval and Distribution of Settlement and for Reasonable Counsel Fees is GRANTED in part and DENIED in part without prejudice; and it is further

ORDERED as follows:

1. The settlement of the case for the total sum of $800,000 is APPROVED as fair and reasonable as to the amount.

2. By no later than August 24, 2018, defendants shall pay the settlement sum to be deposited in the Attorney Trust Account of King & King, LLC.

3. Pursuant to N.J.R. 1:21-7(f), plaintiff's counsel is entitled to an enhanced contingent fee of 33 1/3% of the net proceeds paid to decedent's estate.

4. The Court approves reimbursement to plaintiff's counsel of $48,020.25 for the out-of-pocket costs they paid to prosecute the case.

5. After defendants' settlement payment clears, plaintiff's counsel are authorized to withdraw from their Attorney Trust Account payment of their attorney's fees and costs. This amount totals $298,655.10 ($800,000 - $48,020.25 = $751,979.75 x .3333 = $250,634.85 + $48,020.25 = $298,655.10).

6. The remaining sum in plaintiff's Attorney Trust Account ($501,344.90) shall not be distributed until the following occurs:

a. A Court Order is received from the Chancery Division – Probate Part, Camden County Superior Court, listing the beneficiaries of Norman's Estate and how the net settlement funds will be distributed and paid. The Court shall be served with a copy of the Order.

b. Defendants are served with signed and executed releases from the guardian of each beneficiary of Norman's Estate.

c. Defendants are served with proof that the two outstanding Judgments against the decedent (Kimberly Liptak ($11,025.00) and Gloucester City Welfare ($11,806.71)) have been paid.

7. Plaintiff's counsel shall comply with the provisions in the Order to be entered by the Chancery Division – Probate Part, Camden County Superior Court; and it is further

ORDERED that given the involvement of the Chancery Division – Probate Part, Camden County Superior Court, plaintiff's request for an Order asking this Court to determine the beneficiaries of Norman's Estate and how the Estate's net settlement funds will be distributed and paid is DENIED without prejudice; and it is further

ORDERED the Clerk of the Court shall open this matter for the purpose of entering this Order and then shall close the file.[8]

                                          s/Joel Schneider
                                          JOEL SCHNEIDER
                                          United States Magistrate Judge

Dated: July 23, 2018

---

[8] Although not binding on the Court, Norman consented to their attorneys' fee application.